## Thomas Mellon, Appt., v. M. L. Painter et al.

Under the terms of the act of May 28, 1858, providing that when a rate of interest for the loan of money exceeding that fixed by law has been contracted for, the borrower or debtor need not pay the excess, but may retain and deduct such excess from the amount of such debt; and where he has voluntarily paid the whole debt, together with interest exceeding the lawful rate, he may recover back such excess by action, this right of action does not accrue until he has first paid voluntarily, both the debt itself and the excessive interest; and until that time arrives, no paper which the borrower or debtor may sign, whether it be contemporaneous with the original obligation, or whether it be given between that time and the time of payment, will operate as a waiver of his right to retain or recover back such excessive or usurious interest.

A creditor cannot evade the law and enforce the payment of usury by any arrangement or device with the borrower or debtor.

An instrument given by the borrower or debtor after the debt secured by a mortgage was due, and at a time when payment on account and settlement had been made between the parties, and when the time of payment of the balance of the debt had been extended, although purporting to be a release of the creditor, and of all the securities held by him, from all claims and demands whatever, on account of usury, or extra interest, had or taken, and containing an agreement not to set up any plea or claim of the kind, and authorizing any attorney to appear for the debtor and enter a *retraxit* or discontinuance of such plea or claim, does not operate as a waiver of the debtor's right to retain or recover back such excessive interest.

(Decided October 18, 1886.)

Argued October 5, 1886, before GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.  October Term, 1886, No. 103, W. D.  Appeal from a decree of the Orphans' Court of

Cited in Markle Bros. v. Straw, 5 Kulp, 57.

NOTE.—The surety upon a note is not discharged by the payment of usurious interest by the principal unless there be evidence of some change in the contract. Keener v. Miller, 3 York Legal Record, 217.  Any usurious interest paid will be deemed a credit on the principal sum due.  Mahoney's Estate, 15 Pa. Co. Ct. 302.  See note to Anderson's Appeal, 1 Sad. Rep. 45.

Westmoreland County dismissing appellant's exceptions and confirming the report of the auditor rejecting appellant's claim to the fund in the administrator's hands. Affirmed.

The facts sufficiently appear in the following report of the auditor:

"Mortgage dated March 9, 1878, Recorded in Westmoreland county, in Mortgage Book, Vol. 10, pp. 572–3 and 4. Debt $21,614. Interest from date. Claim, balance $1,129.37.

"The above-recited mortgage was a lien on the 'Williams Farm,' which was sold by accountants by an order of the orphans' court of this county, for the payment of debts, and purchased by Dr. H. G. Lomison.

"The said purchaser being desirous of paying off and discharging the indebtedness secured by this mortgage, a dispute arose between Judge Mellon, the mortgagee, and the administrators of the mortgagor, as to the correct amount due thereon; whereupon, an agreement was entered into between the said parties in dispute, wherein, *inter alia,* it was stipulated that the mortgagee should satisfy said mortgage on the payment to him of $16,200, but that by reason of such satisfaction he should not be debarred from presenting the balance of his claim, to wit, $1,129.37, with interest and costs, in the distribution of the fund in the orphans' court of said county, or elsewhere, wherever the fund should be distributed, etc.

"Accountants allege that this balance claimed, to wit, $1,129,-37, is the amount of excessive or usurious interest paid by the mortgagor, in his lifetime on said mortgage; and, being such, cannot be recovered, and in support of this offer testimony to show the amount of usury thereon. M. L. Painter, one of the accountants and a legatee under the will of Israel Painter (who has released all his interest in this claim), testifies that he was present when the mortgage was executed, and understands the transaction—that it was given on the 'Williams property,' and dated March 9, 1878. At that time, or prior, Colonel Painter had bought the interest of William Welsh in the same farm, and when making that purchase, assumed the payment of a mortgage which Welsh had executed to Mellon, the amount of which, as stated at that time by Mellon, was $14,685.03.

"The following items went into and composed the Painter mortgage, *viz.:*

| | |
|---|--:|
| Buchler, Brubright & Company, judgment | $ 164 74 |
| Joseph Williams, executor, judgment | 1,000 00 |
| George Mechling, executor, judgment | 2,000 00 |
| I. Calluer & Brother, judgment | 1,341 55 |
| R. Reeds, administrator (paid to sheriff) | 570 91 |
| Expenses incurred by Mellon, recording mortgages, etc. | 28 24 |
| Two per cent premium or discount | 429 00 |
| Cash paid to Colonel Painter | 1,394 53 |
| | |
| Amount of mortgage | $21,614 00 |

"Credits claimed on same and not disputed, are as follows, *viz.:*

| | |
|---|--:|
| November 27, 1878 | $ 656 82 |
| January 20, 1880 | 4,026 00 |
| December 24, 1880 | 4,000 00 |
| March 21, 1881 | 16,200 00 |

"Said witness further says "that on March 21, 1881, after deducting usury, I calculated that there was only due on this mortgage $16,152.73; at which the administrators paid the $16,200 on the agreement.'

"Taking the foregoing *data,* as furnished by this witness, to be correct, the auditor has verified his calculation as to the amount due March 21, 1881, namely, $16,152.73; and accountants on that date paid more than that amount, to wit, the sum of $16,200, as appears by the agreement already referred to.

"In reply to this claimant offers paper hereto attached, of which the following is a copy: 'For past favors as well as in consideration of $50 to me now in hand paid, and for the extension granted, I hereby release Thomas Mellon and all securities given by me and held by him, from all claims and demands or defalcation whatever for or on account of usury or extra interest heretofore had or taken; and I stipulate and agree to set up no plea or claim of the kind under any circumstances; and I hereby authorize and empower any attorney of any court of record irrevocably to appear for me and enter a *retraxit* or discontinuance

of any such plea or claim, should any such ever be made by or through me.

" 'Witness my hand and seal this 20th day of January, 1880.

Israel Painter [Seal.]

" 'Attest:

M. L. Painter.

" 'Received the above $50.00 mentioned this day.

I. Painter.'

"This remarkable instrument (in which usury is admitted) was executed by Colonel Painter, at a time when the mortgage was due and after payment on account and a reduction of the debt had been made, and time of payment extended. It is skilfully drawn and evidently was prepared with great care by one well versed in the law, and was clearly intended to release the mortgagee 'from all claims and demands or defalcation whatever, for or on account of usury or extra interest heretofore had or taken,' and is here offered by claimant as a full and complete waiver of the mortgagor's right to retain or recover back the extra or usurious interest paid on said mortgage.

"The auditor has read with much interest the elaborate and ingenious argument submitted by claimant in support of the validity of the release or waiver contained in this paper; but it seems to him, however, that the only question presented in this case for determination is, Can a borrower or debtor, under the circumstances as presented in this case, by an instrument of writing such as was here used, waive the right to retain or recover back usurious interest?

"Under the provisions of the act of May 28, 1858, when a rate of interest for the loan or use of money exceeding that fixed by law shall have been contracted for, the borrower or debtor shall not be required to pay the excess, and it shall be lawful for the borrower at his option to retain and deduct such excess from the amount of any such debt, etc., and in cases where the borrower or debtor has voluntarily paid the whole debt or sum borrowed, together with interest exceeding the lawful rate, he may recover back such excess by action, if commenced within six months. This right of the debtor, however, to sue for and recover back such excess does not accrue until he has first paid, voluntarily, both the debt itself and the excessive interest; and until that time arrives, the auditor is of opinion that no paper which the borrower or debtor may sign, whether it be contemporaneous

with the original obligation, or whether it be given between that time and the time of payment, will operate as a waiver of his right to retain or recover back such excessive or usurious interest. The instrument here relied on by claimant having been given by the borrower or debtor after the debt secured by the mortgage was due, and at a time when payment on account and settlement had been made between the parties, and when the time of payment of the balance of the debt had been extended, does not operate as a waiver of the debtor's right to retain or recover back the excessive interest here claimed; his right under the law to do so being of public policy cannot be set aside. For these reasons this claim is not allowed. Bosler v. Rheem, 72 Pa. 54; Duquesne Bank's Appeal, 74 Pa. 426; Heath v. Page, 63 Pa. 108, 3 Am. Rep. 533; Campbell v. Sloan, 62 Pa. 481; Walter v. Breisch, 86 Pa. 457."

The appellant filed the following exceptions to the auditor's report:

1. The auditor erred in disallowing exceptant's claim for the reasons given in his report.

2. The auditor erred in disregarding the settlement between the claimant and decedent, and release given for interest in excess of 6 per cent after decedent's right to defalcate the same had accrued.

3. The auditor erred in disregarding the compromise settlement and release for a valuable consideration, given to the claimant by decedent after decedent's right of action and defalcation had accrued as to the usury alleged.

4. The auditor erred in holding in effect that after a note or other obligation in which excessive interest has been reserved is due and payable, and the borrower's right to defalcate has fully accrued, he cannot for a valuable consideration compromise or release his claim by any act or for any consideration which would bind him; and holding also that such consideration need not be accounted for or restored.

5. The auditor erred in holding that a claim for usury, after it has accrued and in the power of the party to assert, cannot, like money had and received for him, be waived and released, or compromised under any circumstances, for any consideration; and that it is so obnoxious to public policy as to render any compromise or satisfaction for it invalid and void.

6. The auditor erred in disallowing this exceptant's claim under the evidence in the case, etc.

1. (Additional exception.) The auditor erred in the liquidation of exceptant's claim.

2. (Additional exception.) The auditor does not compute the interest as agreed on between the claimant and the executors; nor liquidate and compute the claim so that it may be allowed by the court in case the ruling of the auditor in the usury question is reversed.

On the hearing of these exceptions the court below delivered the following opinion:

"We have examined the written agreement which the claimant has presented, but in the face of the act of assembly and the uniform construction of it by the courts we cannot see how it is possible for a creditor to evade the law and enforce the payment of usury by any arrangement or device between the same parties, and the exceptions are dismissed.

"As to the additional exceptions, 1 and 2, the first of these is dismissed without prejudice, so that the auditor may review himself and make the correction, if satisfied there was error in time of computation in any further distribution; as to the second additional exception the auditor might have done so, but he had power to make the ruling and find the fact as he did; and there was nothing improper in this, especially when the fund did not reach all the claims in full. This exception is also dismissed.

"And now, February 16, 1885, upon full hearing and due consideration, it is ordered and decreed that the auditor rehear and take further testimony as to claim No. 43, etc. (not appellant's), and as to claim 77. The exceptions at claim No. 77, Hon. Thos. Mellon, are dismissed, the first 'additional' exception as to the computation of interest, however, without prejudice."

Thomas Mellon took this appeal, assigning as error the action of the court:

1. In dismissing appellant's exceptions to the auditor's report and in rejecting appellant's claim; and

2. In rejecting that part of appellant's claim which the appellees' own figures and testimony showed him entitled to and not tainted with usury.

3. In disallowing that part of appellant's claim which the set-

tlement between the parties showed to be purged of usury, and a new and sufficient consideration substituted.

4. In holding that the right of election to recoup or recover back usury which the act of assembly vests in the borrower is not a personal privilege confined to the borrower personally but extends to his administrator.

5. Also, in ignoring the settlement and release of January 20, 1850, made and entered into by decedent in his lifetime without impeachment of, or regard to, or accounting for, or restoring the consideration.

6. Also, in sustaining the auditor's finding of usury to the extent of appellant's entire claim, upon no other evidence to support it than the mere opinion of the witness, and without proof of facts or any corroborative circumstances.

*J. A. Marchand, J. S. Stickler,* and *E. E. Robins,* for appellant.—The appellees have no power to exercise the option vested in the decedent. Miners' Trust Co. Bank v. Roseberry, 81 Pa. 309.

This case also distinguishes what could be done under the act of 1723, which cannot be done since the act of 1858. It refers to Greene v. Tyler, 39 Pa. 361, and Bachdell's Appeal, 56 Pa. 386, showing that, prior to the act of 1858 a judgment creditor or second mortgagee, claiming funds for distribution as against other creditors or prior encumbrancers, could recoup for usury included in the claims of such other creditors or prior encumbrancers, because before that act usury was unlawful and fraudulent; but since the act of 1858 this could not be done, because since then the usury is not fraudulent and unlawful in itself; and to enable a third party creditor to object to it, he must prove that it was a scheme to defraud him. In Verner v. Carson, 66 Pa. 440, and in Miners' Trust Co. Bank v. Roseberry, 81 Pa. 309, it was fully considered and decided that without the debtor having first made his election to repudiate or reclaim, his other creditors could not interfere unless actual fraud as to them was established.

It is also held in Good v. Grant, 76 Pa. 52, that the payment of interest in excess is not necessarily fraudulent as to creditors. See also Montague v. McDowell, 99 Pa. 265; Miners' Trust Co. Bank v. Roseberry, 81 Pa. 309.

A release of usury is valid if founded on good consideration.

Heath v. Page, 48 Pa. 144; Chamberlain v. M'Clurg, 8 Watts & S. 31.

Nor is usury fraud. Lennig's Appeal, 93 Pa. 301; Wheelock v. Wood, 93 Pa. 298; Bosler v. Rheem, 72 Pa. 55.

As regards interest, we claim it from the 21st of March, 1881, till payment is made. It was stipulated for in the contract recited in the auditor's report, by which the proceeds of sale of the mortgaged premises were substituted for the property. The mortgaged property sold for much more than the mortgage. Yeateman's Appeal, 102 Pa. 297.

*J. F. Wentling* and *Moorhead & Head,* for appellees.—The principle to be deduced from our own authorities is that the excess of interest paid over 6 per cent is the money of the borrower, which, when received by the creditor, he cannot retain, but holds for the use of the debtor. Marr v. Marr, 16 W. N. C. 436; Heath v. Page, 63 Pa. 108, 3 Am. Rep. 533; Earnest v. Hoskins, 100 Pa. 551; Campbell v. Sloan, 62 Pa. 481; Overholt v. First Nat. Bank, 82 Pa. 490; Schutt v. Evans, 16 W. N. C. 329; Walter v. Breisch, 86 Pa. 457; Warren's Appeal, 1 Sad. Rep. 310.

As to the right of the administrators to defend against usury, the appellant holds that, if the decedent did not decide to recoup in his lifetime, the administrators had no right to do so for him. As the usury has never been paid, but deducted from the amount of such debt by the administrators, it was not necessary for them to bring an action. To say that the administrators could not retain this money, as well as bring an action, if necessary, would be to deprive them of the long-established practice under the law relating to "what actions survive to the executor or administrator," laid down in Williams on Executors, p. 863.

It might be said with the same degree of justice and plausibility that, if a decedent in his lifetime failed to set up the statute of limitations, the administrators or executors would have no right to do so for him after his death. Marseilles v. Kenton, 17 Pa. 245.

In the recent case of Yorks's Appeal, 17 W. N. C. 34, 1 Cent. Rep. 661, this court says: "But in the case of creditors, the ordinary relation of debtor and creditor existed at the time of the death of the testator, and it continues after that event"—and further down, on the same page, it is said: "The relation which

subsists between a creditor and the estate of his deceased debtor is that of debtor and creditor."

PER CURIAM:

As the learned auditor has, in his report, in this case, made a correct, clear, and concise statement of the law applicable to the facts presented to him, we have but to say that what he has done meets with our entire approval, as does the decree of the court below.

The judgment is affirmed.