## No. 2342
### Second Circuit

---

## ANDERSON v. PEYTON

---

(November 10, 1927. Opinion and Decree.)
(December 21, 1927. Rehearing Refused.)
  (January 18, 1928. Writ of Certiorari and Review Denied by Supreme Court.)

---

(*Syllabus by the Editor*)

1. **Louisiana Digest—Corporations—Par. 54, 61, 62.**
   Where stock of bankrupt corporation was part of the consideration of sale of real estate the owner of the stock warranted its existence at the time of transfer even though it was endorsed "without recourse".

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo. Hon. T. F. Bell, Judge.

Action by Jim Anderson against A. P. Peyton.

There was judgment for defendant and plaintiff appealed.

Judgment reversed.

A. A. LeRosen, of Shreveport, attorney for plaintiff, appellant.

Clem V. Ratcliff, of Shreveport, attorney for defendant, appellee.

WEBB, J. Plaintiff sold to defendant certain real estate for the expressed consideration of seven hundred and fifty dollars cash and the assumption by the vendee of a mortgage of one thousand dollars, and in this action plaintiff seeks to show that the real consideration was twenty-two hundred and fifty dollars, represented by seven hundred and fifty dollars in cash or its equivalent, by the mortgage for one thousand dollars, and by five shares of the capital stock, of one hundred dollars per share, in a corporation domiciled at Memphis, Tennessee, and to recover judgment against defendant for five hundred dollars; it being alleged that the stock was worthless to the knowledge of defendant and that the corporation which had issued the stock had been placed in bankruptcy and its assets distributed without leaving any amount for the stockholders at the time of the transfer.

The plaintiff made various allegations of fraud and error resulting therefrom, but as the title to the property was not in contest and no objection was made to the introduction of parol evidence, it is unnecessary to consider the sufficiency of the allegations of fraud and we will consider the evidence as presented as it relates to the question of error in the transfer as to the consideration and the right of plaintiff to recover.

The parties had some negotiations before the transfer, as to which the defendant's testimony is, in part, as follows:

"A. I do not think that Jim made less than six or seven visits and asked me to buy this property. I told Jim that I had about all that I could take care of; asked him to go and see someone else; and he told me, that he had talked to Mr. George Monzingo and someone else and they did not have the money; and I says what do you want for it, and he first told me twenty-five hundred dollars. I says, 'There is no use for me to go there and see the property; the property is not worth it'. 'Well,' he says, 'you come and see it and we can make a trade.' I did not go for several days, and he came back. In the meantime I went there with him, and I told him, I says: '*Jim, I have a stock certificate for seven hundred and fifty dollars; now I might use this property if you want to take this in as a trade*'; and he says: 'Well, I could not use that much, I owe a thousand dollars on the place'; and finally I told him, I says: *Jim, if you take five hundred dollars of the stock', and he says: 'What is it worth?' and I says: 'Jim, I do not know—I could not tell, I can tell what I paid for it'; I says, you take the stock and go to Mr. Gibson in the bank, or anyone else, and see what it is worth, and he took it and came back and says: 'That is all right, I will take it,' and I says: 'Are you perfectly satisfied it is all right?' and he says: 'That is all right.' * * *

"Q. He went out at your suggestion and made inquiries as to the value of the stock?
"A. Yes, sir.
"Q. What did he represent to you when he came back?
"A. He says: 'That is all right, I will take the seventeen hundred and fifty dollars and the stock.' "

The plaintiff says he first offered the property for twenty-five hundred dollars and after some negotiations the price was reduced to twenty-two hundred and fifty dollars, which was to consist of the seven hundred and fifty dollars cash, the assumption by the vendee of a mortgage of a thousand dollars, and the five shares of stock; and the evidence shows that immediately following the drafting of the instrument evidencing the transfer, the certificate for the shares of stock was delivered to defendant together with seven hundred and fifty dollars in cash or its equivalent, and that the mortgage assumed was paid.

The defendant contends, however, that the stock did not constitute a part of the consideration, but, as expressed by counsel, it was just "lagniappe" or a gratuity given to plaintiff after the sale, with reference to which as well as to the value of the stock the evidence of the defendant is, in part, as follows:

"Q. When you turned the stock over to Jim, you considered it worth par?
"A. I did not know what it was worth.
"Q. Well, did you understand that it had no value?
"A. I did not know what it was worth, had not heard a word from them.
"Q. You told Jim that you had paid five hundred dollars for the stock?
"A. Yes, sir.
"Q. You supposed it was worth that amount?
"A. No, sir.
"Q. You told him it was worth that?
"A. I told him I did not know what it was worth, he could find out for himself.
"Q. Did you think at that time, did you have any reason for thinking at that time, or have any information that the stock was absolutely worthless?
"A. I do not know that I thought over it.
"Q. If you had known that the stock was worthless at that time, would you have transferred it to Jim Anderson?
"A. Well, I have sold things that proved not worth much, and I bought them the same way.
"Q. If you had known that the concern had gone into bankruptcy, would you have considered that they had any chance—would you if you had known that the company was in bankruptcy, have considered that stock of sufficient worth to put in this trade?

"A. The way that I bought this property, I figured that I was giving Jim what it was worth, outside of the stock.

"Q. You did not tell him that it was a gift?

"A. No; told him if he wanted to use this stuff he could have it.

"Q. Why did you add 'without recourse' when you transferred the stock?

"A. I do not know why; I do not know that I can explain just why I did it.

"Q. Now is it not a fact that the use of those words was predicated on your belief that the stock had no value?

"A. No, sir; I sell quite a few notes, and I always sign 'without recourse', and I judge I signed that one that way."

The instrument evidencing the sale failing to mention the stock as a part of the consideration, and it being shown that the instrument was read to the plaintiff, and the stock having been transferred with the notation thereon, "without recourse", it appears to be contended that although the negotiations leading up to the passage of the act show that the price was twenty-two hundred and fifty dollars and the stock was considered as a part of such consideration, and that the stock was delivered to plaintiff immediately following the passage of the act of sale, yet the defendant having testified that he explained the situation to the plaintiff at the time of the sale, that the consideration expressed in the instrument should be conclusive.

The defendant did not attempt to detail the explanation which was made to plaintiff, and we think the evidence shows that whatever explanation was made it did not carry notice to the plaintiff that the stock was not to be considered a part of the consideration.

The plaintiff was an ignorant negro and the evidence shows that the parties in their negotiations leading up to the sale considered the stock would be given and received as part of the consideration, and the evidence showing it was delivered immediately following the sale, we think these circumstances are not overcome by the statement that the matter was explained to the plaintiff at the time of the sale or by the fact of the stock having been indorsed "without recourse", and we are of the opinion that the weight of the evidence shows that the stock was at all times considered by the parties as a part of the consideration of the sale and the instrument was erroneous in that it failed to express one of the moving causes on the part of the vendee for the making of the sale.

The evidence conclusively establishes that at the time of the sale, and when the stock was transferred, the corporation which issued the stock had been placed in bankruptcy and its property distributed among its creditors, leaving some debts unpaid and nothing for the stockholders; and the stock having been given as a part of the consideration, even considering the indorsement "without recourse", defendant warranted its existence at the time of the transfer. (C. C. 2666; Knight vs. Lanfear, 7 Rob. 172; Corcoran vs. Riddell, 7 La. Ann. 268; Lincoln vs. Express Co., 45 La. Ann. 729, 12 So 937; Cluseau vs. Wagner, 126 La. 375, 52 So. 547; Meyer vs. Richard, 163 U. S. 385; 41 Law Ed. 191); and it appearing that the stock represented five hundred dollars of the price of the property, we think the plaintiff should recover judgment for that amount.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled and reversed, and that plaintiff, Jim Anderson, have and recover judgment against defendant, A. J. Peyton, in the sum of five hundred dollars with legal interest from judicial demand and all costs of suit.